763 P.2d 302

**Donald P. CHRISTENSEN dba Don Christensen & Associates, Plaintiff–Respondent,**

v.

**Roy RICE & Jane Doe Rice dba Vista Pawn Shop, Defendants–Appellants.**

No. 17187.

Court of Appeals of Idaho.

Oct. 5, 1988.

Dennis J. Sallaz, Sallaz & Doolittle, Boise, for defendants-appellants.

Peter D. Shearer, Boise, for plaintiff-respondent.

WALTERS, Chief Judge.

Roy and Jane Rice (Rice) appeal from a magistrate's judgment holding them liable for breach of a contract to purchase insurance from Marsh & McLennan of Idaho, Inc. The respondent, Donald P. Christensen of Christensen & Associates (Christen-

sen), is assignee of that contract. On appeal, the district court affirmed the magistrate's judgment. Appealing further, Rice raises three issues: (1) whether the trial court erred in deciding this case on a theory of "open account," after allowing Christensen to present evidence supporting recovery under that theory, when the complaint alleged only a theory of "account stated;" (2) whether Christensen's business records were inadmissible as evidence of an insurance contract between the parties; and (3) whether the trial judge erroneously disregarded Rice's testimony at trial. We hold that Christensen's complaint was sufficient to apprise Rice of the nature of the claims against him and to permit recovery on more than one theory, that Christensen's business records were properly admitted as exceptions to the hearsay rule, and that the trial court acted within its authority in assessing the credibility of Rice's testimony at trial. We affirm.

In 1984, Roy Rice operated three businesses—Vista Pawn Shop, Rice's Small Engine Repair, and Mercury Publications—all from the same location in Boise. As a result of increases in his insurance premiums, Rice contacted Marsh and McLennan of Idaho, Inc. (M & M) requesting quotes for fire and casualty insurance on the pawn shop business. Rice spoke with Margaret West, a service representative for M & M, regarding rates and coverage. Mrs. West referred Rice's inquiry to one of M & M's insurance underwriters, the Industrial Indemnity Company (Industrial Indemnity). Industrial Indemnity inspected Rice's pawn shop business, and subsequently sent him an insurance binder and copy of its policy. M & M, operating as the underwriter's agent, handled all correspondence between Rice and Industrial Indemnity, including billings.

In October of 1984, thieves stole a compressor and motorcycle from a fenced-in area at Rice's place of business. Rice sent a loss claim to M & M under the Industrial Indemnity policy. Industrial Indemnity sent an insurance adjuster to speak with Rice about his claim. At the same time, Pat Pinkham, an employee of Industrial Indemnity, conducted a loss control survey of Rice's businesses to evaluate what could be done to avoid similar losses in the future. After evaluating the situation, Industrial Indemnity denied the claim. Rice then sent a loss claim to the Maryland Casualty Company (Maryland Casualty), insurers of the Small Engine Repair Shop, who paid him for his loss.

Subsequent to denial of Rice's claim, M & M made various attempts to collect the premium owed on the Industrial Indemnity insurance policy. Mrs. West sent Rice several letters requesting payment, all of which went unanswered. On March 21, 1985, Mrs. West informed Rice by letter that Industrial Indemnity had canceled his policy, and that he owed M & M $1,040 in unpaid premiums for the period the policy was in force. Again, Rice did not respond. M & M then assigned its account to Christensen, who filed this suit for collection.

Following a trial, a magistrate ruled in favor of Christensen, deciding as a matter of fact and law that either an express or implied-in-fact contract existed between the parties, and that Christensen was entitled to an award in the amount of $2,470.39, representing the unpaid insurance premium, interest, and costs. During trial, Christensen relied heavily on the correspondence between Rice and Mrs. West to establish the existence of the contract. In rebuttal, Rice categorically objected to admission of this evidence on hearsay and relevancy grounds, stating that he had never intended to form an insurance contract with M & M. Rice also asserted that Christensen's complaint specifically alleged that an "account stated" existed between the parties, and that Christensen should be denied relief on any other grounds.

I

On this appeal, Rice argues that the magistrate erred by admitting testimony and evidence of an open account or implied-in-fact contract, when the only cause of action pleaded in Christensen's complaint was for an account stated. Rice contends that he never intended to enter into a binding insurance contract with M & M. He

claims that he contacted M & M only to obtain a quote for the cost of insurance, and did not agree to purchase the policy. He points out that he never signed an insurance contract, and that while he never rejected M & M's offer of coverage in writing, he made several phone calls to Mrs. West stating he did not want to be insured through their agency. Rice also argues that the loss claim filed with M & M was a mistake made by his business manager, and that the claim forms should have been sent to his current insurer, Maryland Casualty. Further, he asserts that at the time he was visited by Industrial Indemnity's insurance adjuster and Mr. Pinkham, he was unaware of the purpose of their visit, assuming that they had visited him to conduct inspections for insurance quotes only. In summary, Rice argues that because the facts adduced at trial do not prove an account stated, and because Christensen has failed to plead any other cause of action, he is entitled to reversal of the magistrate's judgment.

We disagree. A party's pleadings should be liberally construed to secure a "just, speedy and inexpensive" resolution of the case. I.R.C.P. 1(a); *see Deaton v. Leibrock*, 114 Idaho 614, 759 P.2d 905 (Ct. App.1988). With the advent of notice pleading, a party is no longer slavishly bound to stating particular theories in its pleadings. *Dursteler v. Dursteler*, 108 Idaho 230, 697 P.2d 1244 (Ct.App.1985), *later proceeding*, 112 Idaho 594, 733 P.2d 815 (Ct.App.1987). Rather, a complaint need only state claims upon which relief may be granted. *Id.; see generally* I.R.C.P. 8(a)(1). However, the liberality of our modern pleading rules is not without its limits. To insure fair adjudication, a plaintiff may be required to refine the issues once litigation has commenced. *Dursteler v. Dursteler, supra.* For instance, where there is concern about vagueness in the complaint, a motion for a more definite statement may be granted. *Deaton v. Leibrock, supra;* I.R.C.P. 12(e); *see Nelson v. Gish*, 103 Idaho 57, 644 P.2d 980 (Ct.App. 1982). In cases dealing with actions on accounts, I.R.C.P. 12(e) states that a complaint is sufficient if it summarizes "all transactions on the account." [1] In addition, where issues not raised by the pleadings are either expressly or impliedly tried, the trial court has discretion to decide those issues and to permit the pleading party to amend its pleadings to conform to the proof offered at trial. I.R.C.P. 15(b); *Murr v. Selag Corp.*, 113 Idaho 773, 747 P.2d 1302 (Ct.App.1987); *see also M.K. Transport, Inc. v. Grover*, 101 Idaho 345, 612 P.2d 1192 (1980). The trial court has broad discretion in permitting a party to amend its pleadings, and will only be reversed when this discretion has been abused. *Smith v. King*, 100 Idaho 331, 597 P.2d 217 (1979). However, the trial court is under no obligation to compel the pleading party to amend his or her complaint. The emphasis of the rule is to insure that a "just result" is accomplished, rather than requiring strict adherence to rigid forms of pleading. *See Sines v. Blaser*, 98 Idaho 435, 439, 566 P.2d 758, 762 (1977).

In the present case, we are satisfied that Christensen's claims were fairly litigated. In reviewing the record, it appears that Christensen's complaint was sufficient to apprise Rice of the nature of the relief he sought. The complaint, in pertinent part, states:

> The account assigned is based upon an obligation in the amount of $1,164.80 in-

---

1. I.R.C.P. 12(e) states that:

 If a pleading to which a responsive pleading is permitted violates the provisions of Rules 10(a) or 10(b) or is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, he may move for a compliance with Rules 10(a)(4) [10(a)] or 10(b) or for a more definite statement before interposing his responsive pleading. The motion shall point out the defects complained of and the details desired. If the motion is granted and the order of the court is not obeyed within ten (10) days after notice of the order or within such other time as the court may fix, the court may strike the pleading to which the motion was directed or make such order as it deems just. *In actions on an account it shall be sufficient to summarize all transactions on the account,* and the obligor of the account shall have no right to demand a written copy of the accounting except as may be ordered by Rule 34 of these rules. [Emphasis supplied.]

curred by the Defendant ... by reason of services rendered ... to Defendant by plaintiff's Assignor, MARSH AND MCCLENNAN....

Plaintiff has made previous demands for payment of this account, as its Assignor had made before Assignment, but the Defendant has entirely failed, neglected, or refused to pay for the same or the balance thereof and an account stated is therefore alleged to exist....

Although the complaint specifically alleges an account stated, taken on the whole the language implies that the basis of the complaint was recovery of an account for services rendered to Rice by M & M. It is apparent that Rice should have realized the complaint was based on his dispute with M & M over the insurance contract.

Further, upon reviewing the transcript at trial, we are convinced that Rice consented to trying the existence of the underlying contract with M & M. Although Rice denied consenting to trial of this issue, a colloquy at trial demonstrated that he questioned the existence of an insurance contract. For instance, when Rice took the witness stand, he repeatedly denied the contract's existence:

[CHRISTENSEN'S ATTORNEY]: And, now you had mentioned that you recalled several of these letters and statements you received from Marsh and McClennan; Roy, what did you do, if anything, at the time you received some of this correspondence and invoices we've talked about?

[RICE]: I would call ... Margaret [Mrs. West] and ask her what was going on. All I wanted was quotes; I was not looking for insurance, I wanted quotes. I told her that I had insurance; I wanted quotes.

Further, Rice's counsel suggested there was no proof to show Rice had signed a contract with M & M for insurance:

THE COURT: What document are we going to get to that you think is going to establish a contract for insurance?

[CHRISTENSEN'S ATTORNEY]: There are documents in the stack that's arranged chronologically, that are letters to the Defendant that accompanied a binder. There's a binder that went with the letter in there. There's a letter that....

THE COURT: Is there anything coming this direction from the Defendant to them? Anything bearing his signature....

[CHRISTENSEN'S ATTORNEY]: No.

THE COURT: .... or anything that says, "I accept" or any premium payment or....

[CHRISTENSEN'S ATTORNEY]: No.

[RICE'S ATTORNEY]: Judge, I can agree with Counsel. There's absolutely nothing in the records of Marsh McClennan signed by Mr. Rice accepting any coverage or policies by them or making any payment or acknowledging any agreement at all; including an application.

Rice also repeatedly objected to Christensen's offer of documentary evidence to prove the existence of a contract. Based on the testimony, the magistrate found that the existence of the underlying contract was at issue. He was, therefore, fully within his discretionary authority to permit the issue to be tried. We see no abuse in the magistrate's decision. *See Smith v. King, supra.*

Because of the liberality of our notice pleading requirements, and because Rice impliedly consented to try the issue of the underlying contract with M & M, we hold that the trial court did not abuse its discretion to try issues not specifically pled in the plaintiff's complaint.

## II

Second, Rice argues that exhibits 1 through 20 were inadmissible to prove the existence of an insurance contract. He asserts the exhibits lacked relevancy and proper foundation, violated the best evidence rule, were not authenticated, and were hearsay. Although Rice objected on each of these grounds, his arguments on appeal focus on whether M & M's business records are admissible hearsay. Idaho Rule of Evidence 803(6) (Business Record

Exception) states when business records may be admissible as evidence:

A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

The business record exception is in accord with I.C. § 9–414, the Uniform Business Record as Evidence Act, which was in effect prior to adoption of the Idaho Rules of Evidence.

 Based on cases decided under I.C. § 9–414, we recognize that the scope of the business record exception is broad. It permits the admission of hearsay statements in business records although the opposing party has no opportunity to cross-examine the author of the record at trial. In addition, business records are admissible even though they contain minor alterations. *See Hammond v. Hammond,* 92 Idaho 623, 448 P.2d 237 (1968). Likewise, it is not imperative that the declarant at trial have personal knowledge of the content of the business record:

[i]t is not essential to the admissibility of a business record that the clerk who actually made the record be called to testify. Part of the basis of the modern business record rule is a recognition that the quantity of modern record keeping will often not permit the particular clerk who recorded an entry to be later identified, or, if identified, that he may not recall making the particular entry.... The trustworthiness of the record is established by the testimony of a custodial or supervisory official if he can ade-

quately demonstrate the regularity of the particular record keeping as an established procedure within the business routine.

*Hill v. Joseph T. Ryerson & Son, Inc.,* 165 W.Va. 22, 268 S.E.2d 296, 308–09 (1980); *see, e.g., John Scowcroft & Sons Co. v. Roselle,* 77 Idaho 142, 289 P.2d 621 (1955). Records need not be authenticated by the person who actually made them; all that is necessary is that the record be authenticated by a person who has custody of the record as a regular part of his or her work, or has supervision of its creation. 32 C.J.S. *Evidence* § 682(3) (1964); *Cantrill v. American Mail Line,* 42 Wash.2d 590, 257 P.2d 179 (1953); *Olathe Ready–Mix Co., Inc. v. Frazier,* 220 Kan. 646, 556 P.2d 198 (1976); *Fies v. Storey,* 21 Wash.App. 413, 585 P.2d 190 (1978); *Federal Deposit Ins. Corp. v. Staudinger,* 797 F.2d 908 (10th Cir.1986). In fact, a person identifying a business record is competent to testify even though not employed by the business at the time the record was made. *Rossomanno v. Laclede Cab Co.,* 328 S.W.2d 677 (Mo.1959).

In *Curiel v. Mingo,* 100 Idaho 303, 597 P.2d 26 (1979), the Idaho Supreme Court clarified the policy behind admission of business record evidence as an exception to the hearsay rule:

It has been noted that necessity and trustworthiness are the fundamental justifications underlying the admissibility of hearsay evidence as an exception to the general rule against the admissibility of such evidence. Bell, Handbook of Evidence for the Idaho Lawyer, 2d Ed. p. 130. The Business Records as Evidence Act sets forth the statutory requirements for the necessity and trustworthiness of such proffered evidence. In *Kelson v. Ahlborn, supra* [87 Idaho 519, 393 P.2d 578 (1964)], this Court quoted with approval the following from a New Jersey case:

"The basic theory of the uniform law is that records which are properly shown to have been kept as required normally possess a circumstantial probability of trustworthiness, and

**934**

therefore ought to be received in evidence unless the trial court after examining them and hearing the manner of their preparation explained, entertains serious doubt as to whether they are dependable or worthy of confidence. The last clause of the statute [which states] that the books should be accepted 'if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission,' confers considerable discretion upon the trial judge." [*Mahoney v. Minsky*, 39 N.J. 208] 188 A.2d [161] at 166 [(1963)]. 87 Idaho at 529, 530, 393 P.2d at 584.

*Curiel v. Mingo*, 100 Idaho at 305, 597 P.2d at 28.

We agree with the Supreme Court. There are certain types of hearsay evidence which are admissible because the circumstances behind their creation implies a high degree of veracity. Business records are one such legitimate and important classification. The trial court is vested with the authority to admit such evidence. *Cheney v. Palos Verde Investment Corp.*, 104 Idaho 897, 665 P.2d 661 (1983). "Business Records possessing a reasonable degree of necessity and trustworthiness are to be received in evidence unless the trial court, after examination, doubts their reliability." *Idaho Falls Bonded Produce and Supply Co. v. General Mills Restaurant Group, Inc.*, 105 Idaho 46, 49, 665 P.2d 1056, 1059 (1983).

■ In the present case, we find no error in the magistrate's decision to admit M & M's business records. Exhibit 1, a loss control report written by Pat Pinkham, was produced after his inspection of Rice's pawn shop. Mr. Pinkham testified to the manner in which he prepared the report from his personal knowledge near the time of his inspection, and in the normal course of his business. The exhibit was offered by Christensen to show Rice's state of mind concerning the existence of a contract for insurance. The necessary foundation and authentication were provided by Mr. Pinkham's testimony. The document is a copy of the original letter sent to Rice after Mr. Pinkham's inspection. Although portions of the exhibit contained hearsay, the nature of the report itself, as well as the circumstances surrounding its making, substantiate its trustworthiness. The document was therefore admissible as a business record exception to the hearsay rule.

■ Exhibit 2 is a carbon copy of a letter from M & M to Industrial Indemnity requesting a premium quote for insurance on Rice's pawn shop business. The exhibit was offered to show Rice's discussions with M & M concerning a contract for insurance. Verna Heath, who testified about the letter at trial, stated that it was supposedly written at or near the time Rice spoke with M & M about an insurance policy, and was generated in the normal course of M & M's business to provide premium quotes for its customers. Although Heath was not the person who drafted the letter, she identified Mrs. West, the service representative who originally had dealt with Rice, as its author. The document appears trustworthy based on its contents. Although Rice argues that Heath could not authenticate this document because she lacked knowledge of its preparation and content, we disagree. Heath was a custodian of records generated by Mrs. West. Although she was not employed by M & M at the time the documents were made, we are not persuaded that this fact alone diminishes her ability to authenticate the documents. *See Hill v. Joseph T. Ryerson & Son, Inc.*, *supra*; *Rossomanno v. Laclede Cab Co.*, *supra*. This document is also admissible as a business record exception.

Exhibits 3 through 20 include a series of original letters, copies of memoranda, an insurance binder, and several invoices sent from M & M to Rice. These documents were also offered by Christensen to imply a contract between the parties. Again, Verna Heath, who was familiar with M & M's reporting procedures, identified the exhibits, and testified they were prepared in the ordinary course of M & M's business. The documents appear trustworthy. At trial, Rice complained of alterations to Exhibit 3, a letter from M & M to Mr. Rice. How-

ever, minor alterations go to the weight given to evidence, rather than its admissibility. *See Hammond v. Hammond, supra.* Since the alterations complained of constituted a short handwritten note in the upper right-hand corner of the letter, we see no reason to bar its admission on this basis. These documents were also admissible as business record exceptions.

Therefore, we hold that exhibits 1 through 20 were properly admissible as business record exceptions to the hearsay rule, and could be evaluated by the magistrate to determine the existence of an insurance contract.

### III

Finally, Rice asserts that the trial court erred in disregarding his testimony concerning the existence of a contract for insurance with M & M. He claims that his testimony was undisputed and therefore dispositive of the issue of whether or not a contract existed, citing *Dinneen v. Finch,* 100 Idaho 620, 603 P.2d 575 (1979).

We disagree. Rice's assertion questions the magistrate's function as the trier of fact in determining the credibility of witnesses, and deciding whether there was sufficient evidence to show a contract existed between the parties. We find no error on either point. To begin with, the factual findings of the trial court will not be disturbed unless clearly erroneous. I.R. C.P. 52(a); *Standards of Review in State and Federal Courts,* IDAHO APPELLATE HANDBOOK § 3.3.2 (Idaho Law Foundation, Inc. 1985); *Wolford v. Tankersley,* 107 Idaho 1062, 695 P.2d 1201 (1985). In addition, I.R.C.P. 52(a) clearly indicates that regard is to be given to the special opportunity of the trial court to judge the credibility of witnesses who appear before it. *Credit Bureau, Inc. of Georgia v. Harrison,* 101 Idaho 554, 617 P.2d 858 (1980). Where there is sufficient evidence to support the lower court's findings of credibility, this Court, sitting without the first hand observation necessary to evaluate a witness's credibility, will not set aside those findings. *Id.* This standard reflects the view that deference must be accorded to the trial judge's special opportunity to assess and weigh the credibility of evidence and witnesses who appear at trial. *Jensen v. Bledsoe,* 100 Idaho 84, 593 P.2d 988 (1979).

In light of the magistrate's special opportunity to judge the credibility of the witnesses, we hold that the evidence was not clearly erroneous, and was sufficient to support the lower court's finding that an insurance contract existed between the parties. The magistrate listened to the testimony of both Rice and the witnesses presented by Christensen. Although this testimony was contradictory, the magistrate chose to believe the testimony of Christensen's witnesses. This was within his sound discretion. In addition, Christensen also presented documentary evidence which indicated the existence of an insurance contract between the parties. Taken as a whole, the record indicates that the magistrate based his opinion on substantial and competent, although conflicting, evidence. We will not disturb that decision on appeal.

The judgment is affirmed. Costs to respondent. Because Christensen has prevailed, he is also entitled to attorney fees on appeal, based on his timely request pursuant to I.C. § 12–120(3).

BURNETT and SWANSTROM, JJ., concur.